STATE *ex rel* G. W. AVENT, Guardian of A. J. T. AVENT *v.* J. A. WOMACK, Adm'r., and K. MURCHINSON.

A guardian is liable not only for what he does receive, but for what he ought to receive; and if he ought to receive a certain amount in money, and does not, but takes something else, his own bond for instance in the place of money, he and his sureties are liable.

Therefore, where a guardian bought property for himself at the sale of the father of his ward, giving bond with surety therefor to the administrator, and subsequently the administrator surreudered the bond, such guardian who receipted therefor, as so much money paid his ward, under the impression that the ward was entitled to something of his father's estate as distributee, and it subsequently turned out that the estate was insolvent; *Held*, that the non-payment of the amount receipted for was a breach of the guardian bond, and the surety thereon were liable therefor.

CIVIL ACTION, on a guardian bond, tried before *Buxton, J.*, at Fall Term, 1874, HARNETT Superior Court.

One Alvin Avent died intestate in Harnett county, in 1862, leaving real and personal estate. Said Avent left one child, A. J. T. Avent, his only son and heir at law, who is still under age.

N. G. Jones, grandfather of the minor, and intestate, one of the defendants, was appointed guardian June 8th, 1863, and gave bond with K. Murchinson, the other defendant as surety in the sum of $20,000.

B. I. Howze administered upon the estate in 1863, taking possession of the personal property, and renting out the land for the year 1863.

At several sales, made by Howze in 1862, N. G. Jones became the purchaser of personal effects, and gave his note at six month, to secure his purchases. There were three notes, each with the same securities. One note due April 3rd, 1863, for the sum of $35.00. One note due February 26th, 1863, for $287.60, and one for $61.00 due December 24th, 1863. These notes were payable in currency. N. G. Jones also hired

of Howze, the administrator certain slaves belonging to the estate, for the years 1863 and 1864, the hire to be paid in good money, secured by two notes, with the same security.

One of these notes was for $81.00, due January 1st, 1874, and the other for $151, due January 1st, 1865. N. G. Jones also occupied the dwelling house and cultivated, as his own the land of his ward, during the years 1864, 1865 and 1866, the annual rent of which was worth $100, in good money. N. G. Jones as guardian, kept no account and made no returns.

In 1867 N. G. Jones removed from this State to Arkansas, taking his ward with him. The ward lived with his guardian until the death of latter in 1871, and continued to live in the family until his return to this State in May, 1873.

When N. G. Jones, guardian, was about to remove from this State, he had a partial settlement with Howze, the administrator of his ward's father. Having concluded that the ward would be entitled to something from his father's estate as distributee, Howze instead of requiring Jones to pay the above said notes, upon which one Cameron was security, surrendered them and took from Jones the following receipt:

"Received of B. I. Howze, administrator of A. Avent, deceased, thirty-five dollars, April 2, 1863. Four hundred and eighty-seven dollars and sixty cents, Feb. 1863. Sixty-one dollars, Dec. 24th, 1862. Eighty-one dollars, Jan. 1, 1864. One hundred and fifty dollars, Jan. 1, 1865.

Signed                        N. G. JONES, Gr.

No money actually passed in this transaction. The notes of Jones for the above named amounts were merely surrendered by Howze.

After Jones removed from the State B. I. Howze, in the name of the guardian, continued to rent out the land of the ward from year to year, the net proceeds of which amounted to $358. Instead of paying this to Jones, the guardian, Howze applied it in payment of outstanding debts of his intestate.

Howze, as administrator of Alvin Avent, has also sold a part of the land, for assets, and swears it will be necessary to sell more for that purpose.

All that ever went into Joues' hands as guardian, either as property or property's worth, were the amounts specified in the above mentioned receipt, under the circumstances stated. Jones as stated, occupied the house and land of his ward for three years.

When Jones received his note and left the State he was solvent and the notes could have been collected. Upon the death of Jones in 1871, the plaintiff Geo. W. Avent succeeded him as guardian of A. J. T. Avent. The defendant John A. Womack, qualified as administrator in this State, and in this suit pleads a want of assets.

Previous to his departure from this State the ward resided partly with his guardian N. G. Jones, and partly with his relation Mrs. Avent, both of whom furnished him with clothes. In Arkansas he resided. with his guardian N. G. Jones, who provided for him. His board and clothes in this State were worth $60.00 *per annum*, and in Arkansas $87.00 *per annum*. After 1871, the rent of the land was received by his present guardian.

The case was referred for the purpose of stating an account and a balance of $446.31, with interest found in favor of the plaintiff.

The plaintiff filed the following exceptions to the report of the referee:

1. He scales the two last items in the receipt of Jones, for negro hire, which the evidence shows was for good money.

2. He should have scaled the first three items in the said receipt at the dates the notes were given by Jones and not at the times when they fell due.

3. He does not charge the defendants with the amounts received by Howze as agent for Jones.

The defendant filed the following exceptions:

1. The defendant Kenneth Murchinson objects to the finding of the referee in regard to the receipt N. G. Jones gives as guardian to B. I. Howze, and submits that as security for the guardian he is not liable. The consideration being, according to the testimony of Mr. Howze an individual and private debt of N. G. Jones and not coming into his hands as funds of his ward.

2. That the security on the guardian bond should not be charged with land cultivated and houses occupied by N. G. Jones, especially during the war unless it appears that he might have rented the land to other suitable persons. It being the guardian's duty to take charge of the same, and further that such use, is not funds coming into the hands of the guardian of such a character as to make the security on the guardian bond liable for the same.

3. That the referee erred in not charging the ward with his board and clothing for the reason given by him that he would be exceeding the income of his wards estate, especially as he charges the guardian with the use and cultivation of the houses and land, which we respectively submit is nothing but income from his estate and might all have been expended in his board and clothing.

His Honor sustained the first and second exceptions of the plaintiff, and overruled the third.

The first and second exceptions of the defendant was overruled, and the third sustained.

The account being reformed in accordance with the ruling of his Honor, judgment was rendered for the plaintiff. The defendant, J. A. Womack, having pleaded " fully administered and no assets ultra," judgment *quando* was rendered against him.

Thereupon the defendant, Murchinson, appealed.

*W. McL. McKay* and *Neill McKay*, for appellant.
*H. A. London, Jr.*, contra.

READE, J. The defendant, Murchison, was surety on the guardian bond of the plaintiff's guardian.

The plaintiff ward was supposed to be entitled to an interest in the estate of his deceased father. And at the sale of the estate of his father, his guardian bought property for himself, and gave his bond therefor, with surety, to the administrator. And subsequently, the guardian took his bond back from the administrator, and gave the administrator a receipt as guardian for the amount of the bonds as so much money for his ward. And the same was true of some other bonds which he had given the administrator for the hire of slaves. The guardian died insolvent. And the only point made in this Court is, whether the non-payment of that amount by the guardian to his ward, is a breach of his guardian bond for which the defendant is liable as surety?

The defendant insists that he is not liable, for two reasons:

1. Because, in fact, the guardian did not receive any money, and thereby he was the less able to pay the ward, and save the defendant harmless. To this it is answered that if he did not receive money, he received money's worth, the property bought at the sale, and also his own bond which he would have had to pay.

And again, a guardian is liable not only for what he does receive, but for what he ought to receive; and if he ought to have received the amount in money and did not, but took something else, his own bonds, in the place of money, he and his sureties are liable.

2. Because, in fact, there was nothing due the ward from the estate of his father; for, although at that time it was supposed that that amount would be due the ward, yet, subsequently, the estate proved to be insolvent.

This cannot avail the defendant. If an administrator chooses to pay over to a distributee, it is only under peculiar circumstances that he can be heard to say that nothing was due, and recover it back. But here the administrator makes no complaint; and surely no one else can.

26

It is proper to remark that there is no allegation that any fraud was intended between the administrator and guardian, for the purpose of affecting the defendant.   If there had been it would have presented a different case.   But the transaction was a fair one, and was for convenience only.   The guardian was solvent at the time, and was the grandfather of the ward, and he with the ward, were about removing from the State.

There is no error.

PER CURIAM.                              Judgment affirmed.